Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSHANTH KALLEM,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PCTEL, INC., JAY SINDER, CINDY ANDREOTTI, GINA HASPILAIRE, CYNTHIA KEITH, STEVE LEVY, DAVID NEUMANN, and ANTHONY R. ROSSABI,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Shushanth Kallem ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against PCTEL, Inc. ("PCTEL" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Amphenol Corporation ("Parent") through merger vehicle Hilltop Merger Sub, Inc., a wholly owned subsidiary of Parent ("Merger Sub" and collectively with Parent, "Amphenol"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-cash merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 16, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of PCTEL's common stock will be converted into the right to receive $7.00 in cash, and the Proposed Transaction is valued in the aggregate at $139.7 million. As a result of the Proposed Transaction, PCTEL will become a wholly owned subsidiary of Parent.

3.      Thereafter, on October 30, 2023, in support of the Proposed Transaction, the Company and PCTEL caused to be filed with the SEC a Form PREM14A attaching the Preliminary Proxy Statement in support of the Proposed Transaction, which was thereafter amended on November 9, 2023 with the filing of a Definitive Proxy Statement on form DEFM14A.

4.      The Proposed Transaction is unfair for a number of reasons.  Notably, the Definitive Proxy Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for PCTEL, provided by PCTEL management to the Board and the Board's financial advisor Lincoln International LLC ("Lincoln"); and (c) the data and inputs underlying the financial

- 2 -

valuation analyses, if any, that purport to support the fairness opinion(s) created by Lincoln, if any, provided to the Company and the Board.

5.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

6.      Plaintiff is a citizen of Indiana and, at all times relevant hereto, has been a PCTEL stockholder.

7.      Defendant PCTEL together with its subsidiaries, provides industrial Internet of Thing devices (IoT), antenna systems, and test and measurement solutions worldwide.  PTEL is incorporated in Delaware and has its principal place of business at 471 Brighton Drive, Bloomingdale, IL 60108.  Shares of PCTEL common stock are traded on the NASDAQ Exchange under the symbol "PCTI".

8.      Defendant Jay Sinder ("Sinder") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

9.      Defendant Cindy Andreotti ("Andreotti") has been a director of the Company at all relevant times.

10.      Defendant Gina Haspilaire ("Haspilaire") has been a director of the Company at all relevant times.

11.      Defendant Cynthia Keith ("Keith") has been a director of the Company at all relevant times.

12.      Defendant Steven Levy ("Levy") has been a director of the Company at all relevant times.

13.     Defendant David Neumann ("Neumann") has been a director of the Company at all relevant times, as well as serving as the Company's Chief Executive Officer ("CEO").

14.     Defendant Anthony R. Rossabi ("Rossabi") has been a director of the Company at all relevant times

15.     Defendants identified in ¶¶ 8 - 14 are collectively referred to as the "Individual Defendants."

16.     Non-Party Parent together with its subsidiaries, primarily designs, manufactures, and markets electrical, electronic, and fiber optic connectors in the United States, China, and internationally.  Parent is incorporated in Delaware and has its principal place of business at 358 Hall Ave., Wallingford, CT 06492.  Shares of Parent common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "APH".

17.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

### SUBSTANTIVE ALLEGATIONS

*Company Background*

21.     PCTEL, Inc., together with its subsidiaries, provides industrial Internet of Thing devices (IoT), antenna systems, and test and measurement solutions worldwide.

22.     The Company designs and manufactures precision antennas and industrial IoT devices that are deployed in small cells, enterprise Wi-Fi access points, fleet management and transit systems, and in equipment and devices for the industrial IoT.

23.     PCTEL's antenna portfolio includes Wi-Fi, Bluetooth, land mobile radio, tetra, global navigation satellite systems, cellular, industrial, scientific, medical, long range, and combination antenna solutions for used in public safety and military communications, utilities and energy, precision agriculture, smart traffic management, electric vehicle charging stations, passengers and cargo vehicles, forestry machinery, and off-road vehicles. The company's industrial IoT devices include access points, radio modules, sensor communication modules, and wireless communication sensors for used in utilities and smart grid, oil and gas, manufacturing, logistics, industrial automation, smart metering, and asset tracking markets.

24.     The Company also offers radio frequency (RF) test and measurement products that enhance the performance of wireless networks with a focus on LTE, public safety, and 5G

technologies for cellular testing, public safety and private radio network testing, federal government communications testing, and indoor building network testing applications; and engineering design services.

26. In addition, the Company provides a cloud-based reporting platform for public safety to manage the data collection process and access final reports through an online map-based interface. It supplies its products to wireless equipment distributors and rental companies, public and private carriers, wireless infrastructure providers, and value-added resellers, as well as original equipment manufacturers.

26. The Company's recent financial results from the quarter preceding the announcement of the Proposed Transaction indicate sustained and solid financial performance. For example, in the report of the 2023 Q2 financial results dated August 8, 2023, the Company highlighted such successes as announcing new product lines and features such as a 4G LTE and 5G network monitoring capabilities for its SeeHawk Monitor system.

27. Speaking on these positive results, Defendant and CEO Neumann stated, "We continue to execute our three strategies for growth and are encouraged to see improvements in overall customer demand in the second quarter."

28. Defendant Neumann continued noting the bright future prospects for the Company, "PCTEL is well positioned in our target markets to grow as market conditions improve, and we look forward to driving growth for years to come."

29. These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by PCTEL.

30.     Despite this upward trajectory, the Individual Defendants have caused PCTEL to enter into the Proposed Transaction without providing requisite information to PCTEL stockholders such as Plaintiff.

**_The Flawed Sales Process_**

31.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     The Definitive Proxy Statement fails to provide adequate explanation as to why multiple financial advisors were retained by the Board during the process, at excess cost compared to engaging a single financial advisor.

33.     Additionally, the Definitive Proxy Statement fails to provide information regarding how much consideration the original financial advisor Lake Street Capital Markets ("Lake Street") was paid and/or is owed for its services related to the Proposed Transaction.

34.     Moreover, despite indicating that Lake Street created certain financial analyses regarding the Company and the Proposed Transaction which were presented to the Board, the Definitive Proxy Statement fails to provide such financial analyses.

35.     Additionally, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Amphenol, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions

contained therein, including, all specific conditions, if any, under which such provisions would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On October 13, 2023, PCTEL issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BLOOMINGDALE, Illinois – October 13, 2023 –** PCTEL, Inc. (Nasdaq: PCTI)( "PCTEL" or the "Company"), a leading global provider of wireless technology solutions, today announced that it has reached a definitive agreement to be acquired by Amphenol Corporation (NYSE: APH), one of the world's largest providers of high-technology interconnect, sensor and antenna solutions.
>
> **Highlights:**
>
> - Amphenol to acquire all outstanding shares of PCTEL
>
> - Deal structured as an all cash transaction for total consideration of approximately $139.7 million
>
> - PCTI stockholders to receive $7.00 per share in cash
>
> - Deal subject to PCTEL stockholder approval and customary closing conditions
>
> - PCTEL stockholders' meeting expected to be held before the end of Fiscal 2023
>
> "Today marks an exciting milestone for PCTEL as we join forces with one of the world's leading antenna solutions companies in Amphenol," said David Neumann, Chief Executive Officer of PCTEL. "Our team has done an excellent job of growing the business, establishing a leadership position in both antenna and test & measurement (T&M) innovation, and meeting our customers' strong global demand for high reliability applications. Amphenol is a leading global provider of interconnect, sensor and antenna solutions. Their sustained financial strength and unique entrepreneurial culture will create a valuable home for our employees around the world. We look forward to the accelerated growth opportunities enabled by the combination of our two companies."

Jay Sinder, Chairman of PCTEL's Board of Directors, said, "This transaction follows a nearly yearlong strategic process that has been overseen and approved by the Board of Directors. With this transaction, we are pleased to deliver cash value to our dedicated stockholders, find a well-aligned company culture for our valuable people, and position PCTEL to embark on its next phase of growth as part of an industry-leading corporation."

William J. Doherty, President, Communications Solutions Division of Amphenol Corporation added, "PCTEL and its employees are clear innovation leaders in the wireless technology solutions area, and will serve as an excellent addition to the Amphenol family. We look forward to working closely with them to leverage our existing international presence, dedicated customer base, and scale to take PCTEL's business to new and exciting heights."

**Transaction Summary**

Under the terms of the agreement, which was approved by PCTEL's Board of Directors, PCTEL stockholders will receive $7.00 in cash for each share of common stock they own. The purchase price represents a premium of over 50% to PCTEL's closing stock price on October 13, 2023, the last full trading day prior to the deal's announcement.

The transaction is expected to close in the fourth quarter of 2023 or early 2024, subject to customary closing conditions, including approval by PCTEL stockholders. Upon completion of the transaction, PCTEL will no longer be listed on any public market.

**Advisors**

Lake Street Capital Markets is serving as exclusive financial advisor and Morgan, Lewis & Bockius LLP is serving as legal counsel to PCTEL.

*Potential Conflicts of Interest*

38.     The breakdown of the benefits of the deal indicates that PCTEL insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of PTEL.

39.     Company insiders currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Definitive Proxy Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Beneficial Owners | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| **5% Stockholders** | | |
| Chain of Lakes Investment Fund, LLC / Christopher B. Woodruff(1) | 1,681,946 | 8.7% |
| Royce & Associates, LP(2) | 1,618,791 | 8.4% |
| Haluk L. Bayraktar(3) | 1,380,573 | 7.1% |
| Renaissance Technologies LLC / Renaissance Technologies Holdings Corporation(4) | 1,239,898 | 6.4% |
| Dimensional Fund Advisors LP(5) | 1,190,725 | 6.2% |
| ***Directors and Named Executive Officers*** | | |
| David A. Neumann(6) | 380,631 | 2.0% |
| Kevin J. McGowan | 206,155 | 1.1% |
| Rishi Bharadwaj | 260,226 | 1.4% |
| Steven D. Levy(7) | 148,763 | 0.8% |
| Cindy K. Andreotti(8) | 125,782 | 0.7% |
| Gina Haspilaire | 120,204 | 0.6% |
| M. Jay Sinder | 119,264 | 0.6% |
| Cynthia A. Keith(9) | 88,307 | 0.5% |
| Anthony R. Rossabi | 25,504 | 0.1% |
| All directors and executive officers as a group (14 persons) | 1,684,139 | 8.7% |

40.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which may be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Non-Employee Directors | Number of Shares Subject to Restricted Stock Awards [(#)(1)] | Value of Restricted Stock Awards [($)(1)] |
|---|---|---|
| Cindy K. Andreotti | 16,339 | 115,272 |
| Gina Haspilaire | 16,339 | 115,272 |
| Cynthia A. Keith | 15,794 | 111,427 |
| Steven D. Levy | 15,251 | 107,596 |
| M. Jay Sinder | 18,082 | 127,569 |
| Anthony Rossabi | 25,054 | 176,756 |

| Executive Officers | Number of Shares Underlying Unvested Time-Based Awards[#][1] | Value of Unvested Time-Based Awards [$][2] | Number of Shares Underlying Unvested Performance-Based Awards[#][3] | Value of Unvested Performance-Based Awards[$][4] |
|---|---|---|---|---|
| David A. Neumann | 47,543 | 343,597 | 129,597 | 907,179 |
| Rishi Bharadwaj | 21,883 | 158,749 | 62,807 | 439,649 |
| Suzanne Cafferty | 10,272 | 74,936 | 32,773 | 229,411 |
| Fritz E. Freidinger | 6,774 | 48,507 | 16,680 | 116,760 |
| Tricia Lancaster | 3,650 | 26,273 | 9,434 | 66,308 |
| Daniel Laredo | 3,876 | 27,940 | 10,225 | 71,575 |
| Kevin J. McGowan | 23,867 | 173,675 | 72,200 | 505,400 |
| Sumeet Paul | 11,262 | 81,975 | 34,783 | 243,481 |

42.     Moreover, certain employment agreements with certain PCTEL executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash[$][1] | Equity[$][2] | Perquisites/ Benefits[$][3] | Total[$] |
|---|---|---|---|---|
| David A. Neumann | 990,000 | 1,250,776 | 25,884 | 2,260,660 |
| Kevin J. McGowan | 689,105 | 679,075 | 24,576 | 1,392,801 |
| Rishi Bharadwaj | 734,644 | 598,398 | 17,214 | 1,350,256 |

43.     The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. Thus, while the Proposed Transaction is not in the best interests of PCTEL, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Definitive Proxy Statement***

45. On November 9, 2023, the PTEL Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46. Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Definitive Proxy Statement fails to disclose:

 a. Adequate explanation as to why multiple financial advisors were retained by the Board during the process, at excess cost compared to engaging a single financial advisor;

 b. The specific amount of consideration the original financial advisor Lake Street was paid and/or is owed for its services related to the Proposed Transaction;

 c. The financial analyses regarding the Company and the Proposed Transaction which were created by Lake Street and presented to the Board;

d.      Whether the confidentiality agreements entered into by the Company with Amphenol differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.      All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Amphenol, would fall away;

f.      Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning PCTEL Financial Projections*

47.    The Definitive Proxy Statement fails to provide material information concerning financial projections for PCTEL provided by PCTEL management to the Board and Lincoln, and relied upon by Lincoln in its analyses.

48.    Notably, the Definitive Proxy Statement further reveals that, as part of its analyses, Lincoln reviewed "Financial projections for the Company for the fiscal years ending December 31, 2023 through December 31, 2028, prepared by management of the Company and provided to Lincoln and approved for Lincoln's use by the Company (the "Company Projections")".

49.    The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that PCTEL management provided to the Board and Lincoln. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market

multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to *Initial Management Projections*, the Definitive Proxy Statement fails to disclose material line items, including the following:

> a.   Adjusted EBIT, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: earnings before interest and taxes; the specific adjustments made by replacing book amortization for intangible assets with tax-basis amortization for intangible assets; and operating expenses incurred in 2023 relating to strategic alternatives; and

> b.  Depreciation and Amortization, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: the specific tax-basis amortization for intangible assets;

> c.   The specific inputs, metrics, and assumptions used to determine the future capital expenditures range of 1-2%.

51.     The Definitive Proxy Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

52.     The Definitive Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

53.     Specifically, the Definitive Proxy Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

54.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without complete and accurate projection data for PCTEL being presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of Lincoln's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lincoln*

56.     In the Definitive Proxy Statement, PJT Partners describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57.     With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose:

> a.   The utilized projected unlevered free cash flows of the Company for the fiscal years 2023 through 2028, and the specific inputs, assumptions, and metrics underlying these projections;
>
> b.   The forecasted unlevered after-tax net operating profits adjusted for non-cash

charges, working capital investments, and capital expenditures, and the specific inputs, assumptions, and metrics underlying these projections;

c.   The specific inputs and assumptions used to determine the utilized tax rate range of 26.0%;

d.   The specific inputs and assumptions used to determine the utilized Company weighted average cost of capital range of 13.5% to 15.0%;

e.   The range of terminal values for the Company calculated;

f.   The specific inputs and assumptions used to determine the utilized assumed perpetuity growth rate of 3.5%;

g.   The present value of certain tax benefits anticipated to result from the Company's net operating losses, utilized;

h.   The amount of the Company's cash and cash equivalents as of August 31, 2023, utilized; and

i.   The amount of the Company's capital lease obligations as of August 31, 2023, utilized.

58.   With respect to the *Selected Public Companies Analysis*, the Definitive Proxy Statement fails to disclose:

a.   The specific inputs, assumptions, and metrics used to determine the utilized 2023P EBITDA of 9.0x to 10.0x;

b.   The specific inputs, assumptions, and metrics used to determine the utilized 2024P EBITDA multiples of 8.0x to 9.0x;

c.   The present value of certain tax benefits anticipated to result from the Company's net operating losses, utilized;

    d.   The amount of the Company's cash and cash equivalents as of August 31, 2023, utilized; and

    e.   The amount of the Company's capital lease obligations as of August 31, 2023, utilized.

59.    With respect to the *Selected M&A Transactions Analysis*, the Definitive Proxy Statement fails to disclose:

    a.   The specific date on which each precedent merger closed;

    b.   The aggregate value of each precedent merger analyzed;

    c.   The specific inputs, assumptions, and metrics used to determine the utilized 2023P EBITDA of 9.0x to 10.0x;

    d.   The specific inputs, assumptions, and metrics used to determine the utilized 2024P EBITDA multiples of 8.0x to 9.0x;

    e.   The present value of certain tax benefits anticipated to result from the Company's net operating losses, utilized;

    f.   The amount of the Company's cash and cash equivalents as of August 31, 2023, utilized; and

    g.   The amount of the Company's capital lease obligations as of August 31, 2023, utilized.

60.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

61.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public PCTEL stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

64.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

65.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same

meeting or subject matter which has become false or misleading.

66.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because

it is materially misleading in numerous respects and omits material facts, including those set forth

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Definitive Proxy Statement is materially misleading and omits material facts that are necessary

to render them non-misleading.

67.     The Individual Defendants had actual knowledge or should have known of the

misrepresentations and omissions of material facts set forth herein.

68.     The Individual Defendants were at least negligent in filing a Definitive Proxy

Statement that was materially misleading and/or omitted material facts necessary to make the

Definitive Proxy Statement not misleading.

69.     The misrepresentations and omissions in the Definitive Proxy Statement are

material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his

shares in favor of the Proposed Transaction on the basis of complete information if such

misrepresentations and omissions are not corrected prior to the stockholder vote regarding the

Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

72.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of PCTEL's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

74.     The Individual Defendants acted as controlling persons of PCTEL within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause PCTEL to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled PCTEL and all of its employees.  As alleged above, PCTEL is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 17, 2023                              **BRODSKY & SMITH**

                                        By: *Evan J. Smith*
                                             Evan J. Smith
                                             240 Mineola Boulevard
                                             Mineola, NY  11501
                                             Phone:  (516) 741-4977
                                             Facsimile (561) 741-0626

                                             *Counsel for Plaintiff*